IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

RANDY W. WILLIAMS,          §
     Plaintiff,          §
               §
v.          §          CIVIL ACTION NO. H-13-0990
               §
MICHAEL R. BIESIADA,          §
     Defendant.          §

## MEMORANDUM AND ORDER

This case arises from the accidental shooting of Chad L. Hall, who filed Chapter 7 bankruptcy jointly with his wife, Dusky D. Hall (collectively, "Debtors"). The adversary proceeding is before the Court on Defendant Michael R. Biesiada's ("Defendant") Motion to Dismiss [Doc. # 14] ("Motion"). Plaintiff Randy W. Williams (the "Trustee"), the Trustee of the Hall's Chapter 7 bankruptcy estate, filed a Response [Doc. # 16]. Defendant filed a Reply [Doc. # 18], and the Trustee filed a Sur-Reply [Doc. # 19]. The Court has carefully considered the parties' arguments, the record, and the applicable law, and concludes Defendant's Motion to Dismiss should be **denied.**

## II.   BACKGROUND

The Trustee alleges that on October 23, 2010, Debtor Chad Hall was injured when Michael Biesiada accidentally discharged a rifle manufactured by Remington

Arms Company, Inc. ("Remington").  First Amended Complaint [Doc. # 17], at 2-3.

On December 8, 2010, Debtors Chad and Dusky Hall filed their Chapter 7 bankruptcy

petition in the United States Bankruptcy Court for the Southern District of Texas.  *See*

Report and Recommendation to the United States District Court Regarding the

Withdrawal of the Reference of this Adversary Proceeding [Doc. # 1 in Dist. Ct.]

("R&R"), at 1; Motion, at 1-2.  Randy W. Williams was appointed Chapter 7 Trustee.

R&R, at 1; Motion, at 2.

On January 10, 2011, Debtors filed amended schedules.   Motion, at 2;

Response, at 2.  Specifically, on their Amended Schedule B, Debtors listed, in the

column for the "Description and Location of Property," that they owned "unliquidated

claim resulting from accidental shooting on October 23, 2010, injury to debtor's

upper leg requiring hospitalization, pain and suffering, possible impairment, loss of

future income and other damages, no limitation filed, unknown liability and damages,

debtors' estimate of value $1.00-$300,000, FULL FAIR MARKET VALUE (FMV)

exempted."  Response, at 2; Bankruptcy Schedule B, Exh. A to Reply [Doc. # 18],

at 9.  Debtors listed their claims against Defendant Michael Biesiada (the "Lawsuit")

as joint property and valued the Lawsuit at $18,000 in the column entitled "Current

Value of Debtor's Interest in Property Without Deducting Any Secured Claim or

Exemption."  Response, at 2; Bankruptcy Schedule B, Reply, at 9.

### Schedule B

| Type of Property | None | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property Without Deducting Any Secured Claim or Exemption |
|---|---|---|---|---|
| 21. Other contingent and unliqui-dated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims.  Give estimated value of each. | | unliquidated claim resulting from accidental shooting on October 23, 2010, injury to debtor's upper leg requiring hospitalization, pain and suffering, possible impairment, loss of future income and other damages, no litigation filed, unknown liability and damages, debtors' estimate of value $1.00-$300,000.00, FULL FAIR MARKET VALUE (FMV) exempted | J | $18,000.00 |

In their Amended Schedule C, Debtors elected to file exemptions under federal

law rather than Texas law.  Bankruptcy Schedule C, Response [Doc. # 14], at 6-9.

In Schedule C, Debtors used the same description that was used in Schedule B to

describe the property in the first column of Schedule C ("Description of the

Property").  Schedule C, Response, at 8.  In the second column, which is entitled

"Specify Law Providing Each Exemption," they listed "11 U.S.C. § 522(d)(5),"

known as the "wildcard" provision.[1]  Schedule C, Response, at 8.

---

[1]  Debtors did not list the Lawsuit as exempt under 11 U.S.C. § 522(d)(11)(D) (allowing a debtor to exempt "a payment, not to exceed $22,975, on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent").

## Schedule C

| Description of the Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Market Value of Property Without deducting Exemptions |
|---|---|---|---|
| unliquidated claim resulting from accidental shooting on October 23, 2010, injury to debtor's upper leg requiring hospitalization, pain and suffering, possible impairment, loss of future income and other damages, no litigation filed, unknown liability and damages, debtors' estimate of value $1.00-$300,000.00, FULL FAIR MARKET VALUE (FMV) exempted | 11 U.S.C. §522(d)(5) | $18,000.00 | $18,000.00 |

At the time Debtors filed their petition, 11 U.S.C. § 522(d)(5) allowed for an individual debtor to exempt $1,150 in any property "plus up to $10,825 of any unused amount of the exemption provided under [11 U.S.C. § 522(d)(1)]."  Because they did not exempt property under 11 U.S.C. § 522(d)(1), Debtors each were entitled to exempt $11,975 under 11 U.S.C. § 522(d)(5), which meant that together they could exempt property with a total value of $23,950 under 11 U.S.C. § 522(d)(5).  *See* 11 U.S.C. § 522(d)(5), 522(m); Schedule C, Response, at 8.  In addition to the Lawsuit, Debtors exempted $5,547.82 of property under 11 U.S.C. § 522(d)(5).  As a result, Debtors were permitted to exempt up to $18,402.18 of the value of the Lawsuit without exceeding the limits of 11 U.S.C. § 522(d)(5).  Debtors listed "$18,000" in the third column for "Value of Claimed Exemption."  They also listed "$18,000" in the fourth column for "Current Market Value of Property Without Deducting Exemption."  Schedule C, Response, at 8;  Response, at 3.

The Trustee entered into an Agreement to Cooperate with Debtors (the "Agreement"), granting to Debtors $40,000 or 10%, whichever is greater, of the amount recovered from the Lawsuit. Defendant asserts that the Trustee, Remington, and he stipulated in open court that the Agreement would not impact the Trustee's standing to bring claims against Remington or him. Motion, at 2. The bankruptcy court approved the Agreement on November 26, 2012. *See* Exh. 1 to Response [Doc. # 16], at 14-20.

On December 5, 2012, the Trustee filed this adversary proceeding against Remington and Defendant, seeking damages resulting from the accidental shooting. *See* R&R, at 1. On April 8, 2013, the Court adopted the reasoning of the bankruptcy court's R&R, and granted Remington's Motion for Withdrawal of the Reference [Doc. # 2]. April 4, 2013 Order [Doc. # 3]. Thereafter, the Trustee agreed to dismiss Remington on May 31, 2013. *See* Stipulation of Dismissal of Remington Arms Company, Inc. [Doc. # 9], dated May 31, 2013. The Court approved the dismissal of Remington without prejudice. *See* June 3, 2013 Order [Doc. # 10]. On June 25, 2013, the Court held an Initial Pretrial Conference. *See* June 25, 2013 Minute Entry Order [Doc. # 13]. The Trustee filed an Original Complaint [Doc. # 12] on June 27, 2013, and filed a First Amended Complaint on July 12, 2013.

## II.   LEGAL STANDARD

### A.   Motion to Dismiss: Standing

Defendant argues that the Trustee lacks standing to bring this adversary proceeding against Defendant because Debtors exempted the Lawsuit from the bankruptcy estate (the "Estate").  A case is properly dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction when a party does not have standing to bring a claim.  Under Article III, federal courts' jurisdiction is limited to cases and controversies.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III."  *Id.* at 560 (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984)).  There are three elements necessary for constitutional standing.  *See Lujan*, 504 U.S. at 560.  The first element, an "injury in fact," requires a "concrete and particularized . . . invasion of a legally protected interest."  *Id.* (citations omitted). The second element requires "a causal connection between the injury and the conduct complained of" such that the injury is traceable to the challenged conduct. *Id.*  Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Id.* (citation and internal quotation marks omitted).

The party seeking access to federal court bears the burden of establishing he

has standing. *Time Warner Cable, Inc. v. Hudson*, 667 F.3d 630, 635 (5th Cir. 2012).

In considering a challenge to subject matter jurisdiction, the district court is "free to

weigh the evidence and resolve factual disputes in order to satisfy itself that it has the

power to hear the case." *Id.*

### B.    The Bankruptcy Code

When a bankruptcy petition is filed, a bankruptcy estate is created.  11 U.S.C.

§ 541.  With a few exceptions not applicable to this case, "all legal or equitable

interests of the debtor in property as of the commencement of the case" are part of the

estate.  11 U.S.C. § 541(a)(1).[2]  "'The term 'all legal or equitable interests' has been

defined broadly to include causes of action.'"  *Love v. Tyson Foods, Inc.*, 677 F.3d

258, 268 n.4 (5th Cir. 2012) (citing *Schertz–Cibolo–Universal City, Indep. Sch. Dist.*

*v. Wright* (*In re Educators Grp. Health Trust*), 25 F.3d 1281, 1283 (5th Cir. 1994)).

"Under 11 U.S.C. § 521, a debtor is required, among other duties, to file schedules

of assets and liabilities."  *Park*, 246 B.R. at 841.

---

[2]    *See also Schwab v. Reilly*, 130 S. Ct. 2652, 2663 (2010) ("When a debtor files a
Chapter 7 bankruptcy petition, all of the debtor's assets become property of the
bankruptcy estate, see 11 U.S.C. § 541, subject to the debtor's right to reclaim certain
property as 'exempt,' § 522( 1 )."); *In re Garrett*, 435 B.R. 434, 438 (Bankr. S.D.
Tex. 2010) ("The estate consists of all assets of the debtor, including those in which
debtor has claimed an exemption." (citing *In re Brooks*, 393 B.R. 80, 84 (Bankr.
M.D. Pa. 2008))).

The debtor may exempt property from the bankruptcy estate as specified by either state or federal law, but not both.  *See* 11 U.S.C. § 552(b).  The debtor lists the property being exempted, the statutory provision the exemption is based on, the value of the exemption, and the fair market value of the property including the exemption in Schedule C.  *See* 11 U.S.C. § 552(b), (*l*).  As the Seventh Circuit explained:

> The requirement that the debtor list the property serves at least two functions. One is to settle claims of title, so that on the day of discharge everyone knows who owns what. The other is to allow the trustee to decide which claims to challenge.  Debtors are not perfectly trustworthy, and unless the claim of exemption contains sufficient detail to put the trustee on notice of questionable assertions, it will not be possible to administer the statutory scheme.

*Payne v. Wood*, 775 F.2d 202, 206 (7th Cir. 1985) (citing *In re Friedrich*, 100 F. 284, 286 (7th Cir. 1900)); *see also Park*, 246 B.R. at 842 (citing *In re Mohring*, 142 B.R. 389, 394 (Bankr. E.D. Cal. 1992)) (same).

Section 522 of the bankruptcy code sets forth the types of property a debtor may exempt under federal law and the maximum value that may be claimed in specific property.  *See* 11 U.S.C. § 522(d); *Schwab v. Reilly*, 130 S. Ct. 2652, 2657 (2010).  If a bankruptcy is filed jointly or by a husband and wife, "the exemption cap established by § 522(p) applies separately to each debtor," allowing joint debtors to double the value of their exemptions.  *In re Fehmel*, 372 F. App'x 507, 509 n.7 (5th

Cir. 2010) (unpublished) (citing 11 U.S.C. § 522(m)); *see also In re Davis*, 170 F.3d 475, 478 (5th Cir. 1999).

"[A] party in interest may file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later."[3]  FED. R. BANKR. P. 4003(b)(1).  "[A]n interested party must object to a claimed exemption if the amount the debtor lists as the 'value claimed exempt' is not within statutory limits."  *Schwab*, 130 S. Ct. at 2666 (citing *Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992)); *see also* 11 U.S.C. § 522(*l*).  If the interested party fails to do so, the debtor's property is exempted as listed on Schedule C, even if the exemption exceeds the statutory limits.  *See id.*; *see also In re Barroso-Herrans*, 524 F.3d 341, 344 (1st Cir. 2008) ("[*W*]hatever has been claimed as exempt is beyond the estate's grasp once the deadline has elapsed." (citing *Mercer v. Monzack*, 53 F.3d 1, 3 (1st Cir. 1995))).

---

[3]       Under Federal Rule of Bankruptcy Procedure 4003(b)(2), "[t]he trustee may file an objection to a claim of exemption at any time prior to one year after the closing of the case if the debtor fraudulently asserted the claim of exemption."  The Trustee has not alleged that Debtors fraudulently claimed the exemption at issue.

## III.   <u>ANALYSIS</u>

It is undisputed that under section 16.003 of the Texas Civil Practice and Remedies Code, Debtors are barred by the applicable statute of limitations from bringing this action against Defendant Biesiada.   Except in circumstances not applicable to this case, lawsuits involving personal injury must be filed no later than two years after the injury occurred.   TEX. CIV. PRAC. & REM. CODE § 16.003.   Debtor Chad Hall was injured on October 23, 2010.   Neither, he nor his wife (also a debtor) filed suit on or before the filing of their bankruptcy case on December 8, 2010.   The claims giving rise to the Lawsuit thus became property of the Debtor's bankruptcy estate.

The Trustee was permitted to assert claims on behalf of the Estate until December 8, 2012.   *See* 11 U.S.C. § 108(a)(2).   The Trustee filed the adversary proceeding timely.

Defendant Biesiada asserts that the Trustee lacks standing to bring this adversary proceeding.   *See* Motion, at 3-4; Reply, at 2.   Defendant contends that the Trustee's failure to object within thirty days of the Section 341 Meeting of the Creditors in light of Debtors' inclusion of the statement "FULL FAIR MARKET VALUE (FMV) exempted" when describing the Lawsuit in the columns entitled

"Description and Location of Property" in Schedule B and "Description of the Property" in Schedule C fully exempts all Lawsuit proceeds from the Estate and the Trustee has no authority to pursue the Lawsuit on behalf of Debtors' creditors. *See* Motion, at 3-4; Reply, at 2-3.  Defendant also contends that the full fair market value of the Lawsuit is $18,000.  Reply, at 2-3.  To support these arguments, Defendant relies on the Supreme Court's decision in *Schwab v. Reily*, 130 S. Ct. 2652 (2010), where the Supreme Court stated that if a debtor lists the exempt value of an asset as "'full fair market value (FMV)' or '100% of FMV'" and the trustee fails to object (or the trustee's objection is overruled), "the debtor will be entitled to exclude the full value of the asset."  *Id.* at 2668; *see also id.* at 2666 n.16 (citing *In re Barroso-Herrans*, 524 F.3d 341, 345 (1st Cir. 2008).  Defendant quotes *Schwab*'s language that "Schedule C entries listing the value of a claimed exemption as 'unknown,' 'to be determined,' or '100%' are red flags to trustees and creditors," and that this language puts trustees "on notice that if they do not object, the whole value of the asset—whatever it might later turn out to be—will be exempt" (internal quotation marks omitted)).  If Defendant's interpretation of *Schwab* is correct, the Trustee has no authority to pursue the Lawsuit, and Debtors cannot do so on their own because their individual claims are time-barred.

The Trustee responds by also citing *Schwab* and contends that Debtors' listing "$18,000" as the "Value of Claimed Exemption" in the third column of Schedule C means that only $18,000 of any proceeds from the Lawsuit is exempted. *See* Response, at 6-8. Therefore, the Trustee asserts that the Estate maintains an interest in the Lawsuit and accordingly the Trustee has standing to pursue the claims. *See id.*

A.      **Analysis of *Schwab v. Reily***

To the extent that Defendant's arguments rely, as a practical matter, on Debtors' disclosure in columns one and four of Schedule C, the argument is rejected as inconsistent with the United State Supreme Court's holding in *Schwab*. In *Schwab*, a Chapter 7 debtor listed in Schedule C's first column ("Description of Property") "business equipment" as the property claimed as exempt and listed Bankruptcy Code subsections 522(d)(5) and (d)(6) as the statutory bases for the exemption.[4]  *Id.* at 2657.  In the third column of Schedule C ("Value of Claimed Exemption"), the debtor listed a total of $10,718 of exemptions for the business equipment.  *Id.* at 2657-58.  She also listed "$10,718" in the fourth column of Schedule C ("Current Value of Property Without Deducting Exemption").  *Id.* at

---

[4]      Bankruptcy Code subsection 522(d)(6) allows a debtor to exempt the aggregate interest up to a specific amount "in any implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor."  11 U.S.C. § 522(d)(6).  This subsection is not in issue here.

2657-58.  This value fell with in the combined limits of subsections 522(d)(5) and

(d)(6).  *Id.* at 2658.  The trustee did not object to the claimed exemption.  *Id.*  Later,

the business equipment was appraised at $17,200, and the trustee sought to sell the

equipment so that the approximately $6,500 in excess value could be collected by the

estate.  *Id.*  The debtor opposed the sale, arguing:

> where, as here, a debtor equates the total value of her claimed
> exemptions in a certain asset (column three) with her estimate of the
> asset's market value (column four), she establishes the "property
> claimed as exempt" as the full value of the asset, whatever that turns out
> to be.  Accordingly, [the debtor] argues that her Schedule C clearly put
> [the trustee] on notice that she "intended" to claim an exemption for the
> full value of her business equipment, and that [the trustee's] failure to
> oppose the exemption in a timely manner placed the full value of the
> equipment outside the estate's reach.

*Id.* at 2661.  The Supreme Court disagreed with the debtor and rejected the Court of

Appeals' view that "trustees evaluating the validity of exemptions in cases like this

cannot take a debtor's claim at face value, and specifically cannot rely on the fact that

the amount the debtor declares as the 'value of [the] claimed exemption' is within

statutory limits" and that "the trustee's duty to object turns on whether the interplay

of various schedule entries supports an inference that the debtor 'intended' to exempt

a dollar value different than the one she wrote on the form."  *Id.* at 2660 (citation

omitted).  Instead, the Supreme Court held that subsection 522(d)(5), and most of the

other subsections of 522(d), define the property being exempted "as the debtor's

'interest'—up to a specified dollar amount—in the assets described in the category,

not as the assets themselves."[5]  *Id.* at 2661-62 (citations omitted).  A trustee is only

required to object if (1) "the value of the property claimed as exempt exceeds

statutory limits," (2) the type of property being exempted is improper, or (3) the cited

bankruptcy code provision does not support the exemption.  *See id.* at 2662 n.7.  The

Supreme Court stated that a trustee is:

> entitled to evaluate the propriety of the claimed exemptions based on
> three, and only three, entries on [the debtor's] Schedule C: the
> description of the business equipment in which [the debtor] claimed the
> exempt interests; the Code provisions governing the claimed
> exemptions; and the amounts [the debtor] listed in the column titled
> "value of claimed exemption."

*Id.*  The Supreme Court thus directed trustees, for the purpose of deciding whether to

interpose an object to a debtor's claimed exemption, to review only the first three

columns of Schedule C.  *Id.* at 2663.  The Supreme Court confined the role of column

four, the fair market value estimate for the property, to "aiding the trustee in

administering the estate by helping him identify assets that may have value beyond

---

[5]     *See also In re Luckham*, 464 B.R. 67, 72 (Bankr. D. Mass. 2012) ("As the *Schwab*
court explained, and repeatedly emphasized, where the exemption statute provides
a limited-interest exemption, only a defined monetary interest in the property is
removed from the bankruptcy estate—not necessarily the value of the entire
property." (citations omitted)).

the dollar amount the debtor claims as exempt, or whose full value may not be available for exemption because a portion of the interest is, for example, encumbered by an unavoidable lien." *Id.* (citation omitted).

Applying the principles from the *Schwab* case, the Supreme Court held that the trustee was not required to object to the exemption of the business equipment because "[t]he amounts [the debtor] listed in the Schedule C column titled 'Value of Claimed Exemption' [column three] [we]re facially within the limits the Code prescribe[d] and raise[d] no warning flags that warranted an objection." *Id.* at 2666. The need to object is based on "the facial validity of the value the debtor assigns the 'property claimed as exempt' as defined by the Code." *Id.*

The facts of the present case are materially similar to those in *Schwab*. The party challenging the ambiguous exemption, here, Defendant Biesiada, like the debtor in *Schwab*, seeks to exempt the entire contested asset, rather than the specific dollar amount listed in column three. In both cases, the value claimed as exempt is listed in column three and is "facially within the limits the Code prescribes."[6] *See id.* at 2666. Further, column three does not raise any warning flags that warranted an

---

[6]     Additionally, as in *Schwab*, the value Debtors listed in column three ("Value of Claimed Exemption") of Schedule C matches the value Debtors listed in column four ("Current Value of Property Without Deducting Exemption").

objection.  *Id.*  Applying *Schwab*'s reasoning to the instant facts, the Trustee was not required to object.  The "value claimed exempt," listed as $18,000 in column three, was within subsection 522(d)(5)'s limits.  Defendant at bar relies on the only potentially significant factual distinction between this case and *Schwab*, which is that Debtors included at the end of an extended description of the claims in column one ("Description of Property") the phrase "debtor's estimate of value $1.00-$300,000.00, FULL FAIR MARKET VALUE (FMV) exempted."[7]

The Court concludes that this case's distinction from *Schwab* is not material. Although Debtors used the phrase "full fair market value" mentioned in *Schwab*, Debtors failed to use it in column three, the column where the value of the exemption is to be listed.  Instead, they buried that language in column one ("Description of Property"), in a lengthy description of the property, an "unliquidated claim."  The majority opinion in *Schwab* explained that "an interested party must object to a claimed exemption if the amount the debtor lists as the 'value claimed exempt' [column three] is not within statutory limits."  130 S. Ct. at 2666.  Nothing in Debtors' entry in column three suggests that Debtors were claiming more than the clear dollar figure set forth in column three.

---

[7]     The debtor in *Schwab* did not use any of the "warning flag" language in column one of his Schedule C.

The Court therefore concludes that when Debtors included "full fair market value exempted" or similar language in column one but listed a specific monetary value within the limits of the identified statutory exemption in column three, the Trustee did not waive the Estate's interest in the asset by failing to object to Debtors' claimed exemption under Bankruptcy Rule 4003(b)(1).  The Court holds that the Trustee has standing to pursue the Lawsuit because the Estate retains an interest in those claims.

## B.   **Ambiguous Schedules**

The Court alternatively holds that the Trustee has standing to pursue the Lawsuit because Debtors' Schedule C is ambiguous and thus must be interpreted as exempting only a defined interest in the Lawsuit, not the entire recovery.  "[T]he [Bankruptcy] Code places on debtors [the burden] to state their claimed exemptions accurately and to conform such claims to statutory limits."  *Schwab*, 130 S. Ct. at 2667 n.17; *see also Matter of Faden*, 96 F.3d 792, 795 (5th Cir. 1996) ("'The burden is on the debtors to complete their schedules accurately.'" (quoting *Matter of Springer*, 127 B.R. 702, 707 (Bankr. M.D. Fla. 1991))); *Payne*, 775 F.2d at 206.[8]  As

---

[8]      *See also In re Stacy*, 405 B.R. 872, 879 (Bankr. N.D. Ohio 2009) (citing *Springer*, 127 B.R. at 707) (same); *In re Park*, 246 B.R. 837, 842 (Bankr. E.D. Tex. 2000) (citing *Faden*, 96 F.3d 792) (same); *cf. Schwab*, 130 S. Ct. at 2666 (explaining that (continued...)

the First Circuit explained:

> in legal documents ambiguity is traditionally construed against the drafter, and that canon has special force in this context: after *Taylor*, a failure to object to a claimed exemption has very harsh consequences for the estate, and so it is most fair to place on the debtor the burden of claiming exemptions unambiguously.

*Barroso-Herrans*, 524 F.3d at 345 (citing *United States v. Seckinger*, 397 U.S. 203, 210 (1970); *In re Hyman* ("*Hyman II*"), 967 F.2d 1316, 1319 n.6 (9th Cir. 1992)).

"[A]ny ambiguities with regard to information, or lack thereof, in a debtor's schedules or statements of affairs are construed against the debtor as both the drafter of the documents and as the party most familiar with the information."[9]  *In re Stacy*, 405 B.R. 872, 879 (Bankr. N.D. Ohio 2009) (citing *In re Pickering*, 195 B.R. 759, 762-63 (Bankr. D. Mont. 1996)); *see also Barroso-Herrans*, 524 F.3d at 345 (citing *Seckinger*, 397 U.S. at 210; *Hyman II*, 967 F.2d at 1319 n.6); *In re Slates*, No. EC-12-1168-KiDJu, 2012 WL 5359489, at *8-9 (BAP 9th Cir. Oct. 21, 2012) (construing ambiguity against the debtor and explaining that "ambiguous and imprecise"

---

[8]     (...continued)
    parties in a bankruptcy case are presumed to "act lawfully and with knowledge of the law.").

[9]     *See also In re Morgan-Busby*, 272 B.R. 257, 264-66 (BAP 9th Cir. 2002) (interpreting the debtors' internally inconsistent schedules against the debtors); *In re Hall*, 453 B.R. 22, 30 (Bankr. D. Mass. 2011) (holding that "to the extent the scheduled exemption is ambiguous, the ambiguity must be resolved against the Debtor's limitless interpretation.").

exemption claims were not automatically exempt when no timely objection was filed); *In re C.W. Mining Co.*, 431 B.R. 307, at *8 (BAP 10th Cir. 2009) (unpublished) ("Generally, ambiguities regarding information contained in a debtor's schedules are construed against the debtor as the drafter and as the party most familiar with the information." (citing *In re Stacy*, 405 B.R. at 879)).  "Neither the Trustee nor the bankruptcy court need struggle to divine a debtor's 'intent' underlying claimed exemptions or look beyond the face of Schedule C to figure out what the debtor 'meant' to exempt."  *In re Hall*, 453 B.R. 22, 31 (Bankr. D. Mass. 2011) (citing *Schwab*, 130 S. Ct. at 2665).  Therefore, "a debtor's exemption schedule 'must give notice sufficient to cue the trustee that an objection may be in order,'" and "the sufficiency of a particular cue, or '"warning flag,"' may lie 'in the eye of the beholder.'"  *Schwab*, 130 S. Ct. at 2666 n.16.[10]

Here, when all columns of the Schedules are considered together, the scope of

---

[10]     *See also In re Orton*, 687 F.3d 612, 617-18 (3d Cir. 2012) ("[A] debtor seeking to retain more than an 'interest' must indicate that fact unambiguously in the Schedules." (citing *Schwab*, 130 S. Ct. at 2668; *In re Gebhart*, 621 F.3d 1206, 1210 (9th Cir. 2010))); *Hyman II*, 967 F.2d at 1319 n.6 ("Because the time to object is relatively short, *see* Bankr. Rule 4003(b), it is important that trustees and creditors be able to determine precisely whether a listed asset is validly exempt simply by reading a debtor's schedules.  Given that the debtor controls the schedules, we construe any ambiguity therein against him."); *In re Meyers*, 486 B.R. 365, 378 (Bankr. S.D. Miss. 2013) ("If the Debtors were seeking to exempt the entire asset, the Debtors were under a duty to state so clearly in order to put the Trustee on notice of their intention.").

Debtors' intended exemption regarding the Lawsuit is at best ambiguous.  Debtors

failed to clearly declare that they intended to exempt the entire suit, rather than

$18,000, which was roughly the "wildcard" exemption's maximum value.  This

ambiguity must be construed against Debtors so as to limit the exemption.[11]  By

listing a monetary value in the third column of Schedule C and by including "warning

flag" language only in column one, and not in column three, Debtors failed to give

adequate notice that they wished to exempt the entire Lawsuit rather than merely an

interest in a portion of it.[12]

     There is another reason the Court's interpretation is warranted.  Defendant's

argument that the language in column one of Schedule C trumps the disclosure in

column three of Schedule C renders parts of Schedule C superfluous, if not entirely

meaningless.  Requiring a trustee to divine a debtor's intent or to determine whether

---

[11]    Although courts have held that federal exemption statutes are to be liberally
interpreted, *see, e.g.*, *In re Gandy*, 327 B.R. 807, 808 (Bankr. S.D. Tex. 2005) (citing
*In re Lusiak*, 247 B.R. 699, 703 (Bankr. N.D. Ohio 2000)), the interpretation of 11
U.S.C. § 522(d)(5) is not at issue in this case.  *See Hall*, 453 B.R. at 30 n.15
("[R]esolving ambiguous exemption claims against the debtor is an issue separate
from (and does not conflict with) the principle that exemption statutes are generally
interpreted liberally in favor of debtors." (citing *In re Kuhn*, 322 B.R. 377, 385
(Bankr. N.D. Ind. 2005)).  The parties agree that the Lawsuit is the type of property
that can be exempted under the "wildcard" exemption and that Debtors could
properly exempt $18,000 of the Lawsuit's value under that exemption.

[12]    By listing "$18,000," the same amount listed in column three of Schedule C, in the
last columns of Schedules B and C, Debtors have added to this confusion.

descriptions in column one alter the values placed in column three would undermine the predictability of the Bankruptcy Code, one of the Code's important goals. *See Schwab*, 130 S. Ct. at 2666 (citing *United States v. Budd*, 144 U.S. 154, 163 (1892)).

Accordingly, the Court concludes that the Trustee was not required to object to Debtors' exemption of the Lawsuit as described by Debtors in their Schedules within the specified 30-day period in order to retain the Estate's interest in that Lawsuit.[13]   The Trustee accordingly has standing to pursue his claims against Defendant.  "While Chapter 7 trustees may not bring untimely objections to facially invalid exemptions, they are not tasked with clarifying every ambiguous exemption claimed by debtors."  *Hall*, 453 B.R. at 30 (citing *In re Cormier*, 382 B.R. 377, 397 (Bankr. W.D. Mich. 2008)).  Holding otherwise would create perverse incentives; it would reward a debtor both for failing to fill out Schedule C correctly and for failing to conform their exemption within the statutory limits of 11 U.S.C. § 522(d).[14]

---

[13]   The Court does not decide, at this time, how much of the recovery from the Lawsuit Debtors exempted.  The issue is not ripe or fully briefed.

[14]   Even if the Court is mistaken as to its other rulings, a line of case law supports the Court's ultimate ruling that the Trustee has standing.  The descriptive phrase "full fair market value" would merely exempt the Lawsuit's fair market value as of December 2010, the time the petition for bankruptcy and Schedules were filed.  The "[v]alue and status of exempt property in bankruptcy is determined as of the date that the petition is filed."  *In re Park*, 246 B.R. 837, 844 n.19 (Bankr. E.D. Tex. 2000) (citing *Armstrong v. Hursman*, 106 B.R. 625 (Bankr. D. N.D. 1988)); *see also In re* (continued...)

---

(...continued)

*Gebhart*, 621 F.3d 1206, 1211 (9th Cir. 2010) ("The value of a debtor's exemption is frozen at the time the bankruptcy petition is filed but the value of the property claimed as exempt is not frozen." (citing *Hyman II*, 967 F.2d at 1320 n.9)). Congress intended the estate to include under 11 U.S.C. § 541(a)(6) "anything of value generated by property of the estate." *In re McLain*, 516 F.3d 301, 312 (5th Cir. 2008) (quoting *In re Hanley*, 305 B.R. 84, 86-87 (Bankr. M.D. Fla. 2003)) (internal quotation marks omitted). Accordingly, "[t]he estate does not relinquish property until the bankruptcy case is closed or the estate abandons the property under 11 U.S.C. § 554." *Gebhart*, 21 F.3d at 1212; *see also In re Salazar*, 449 B.R. 890, 898-99 (Bankr. N.D. Tex. 2011) (various property); *In re Evenson*, No. 05-37920-svk, 2010 WL 4622188, at *3 (Bankr. E.D. Wis. Nov. 3, 2010) (a homestead and agricultural land). To the extent property may be worth more than the amount declared as its fair market value at the time a debtor's bankruptcy petition was filed, the estate is entitled to the current fair market value of that property, less the fair market value of the property when the bankruptcy petition was filed. Therefore, the only asset removed from the estate when the "full fair market value" is exempted in Schedule C is "an 'interest' in the property equal to the value of the exemption claimed at filing." *Gebhart*, 621 F.3d at 1210 (citing *Schwab*, 130 S. Ct. at 2660).

Here, Debtors listed in Schedule C, which governs exemptions, "debtor's estimate of value $1.00-$300,000.00, FULL FAIR MARKET VALUE (FMV) exempted" in column one and "$18,000" in column four. Therefore, Debtors indicated in December 2010, when they filed their bankruptcy petition, that the Lawsuit either was valued at $18,000 or some other value between $1.00 and $300,000. Under this alternative line of reasoning, if the Lawsuit results in a recovery higher than $18,000 or possibly $300,000 (the value of the claims at the time Debtors' bankruptcy petition was filed), the Estate would be entitled to any additional value recovered. *See id.* at 1210-11. Such a result is not out of the question as the Trustee in his First Amended Complaint seeks at least $6 million in damages from Defendant. First Amended Complaint, at 6-8. Accordingly, the Estate retains an interest in the lawsuit, and the Trustee has standing.

The Court notes, however, that it does not base its decision on this reasoning. Moreover, the Court does not make any determination as to the value of the Lawsuit at the date the bankruptcy was filed. An unfiled lawsuit cannot easily be valued.

IV.   **CONCLUSION**

Accordingly, applying the Supreme Court's reasoning in *Schwab*, the Trustee has standing to pursue the Lawsuit because Debtors' ambiguous schedules must be interpreted as exempting only an interest in the Lawsuit, not all recovery.  It is therefore

**ORDERED** that Defendant Michael Biesiada's Motion to Dismiss [Doc. # 14] is **DENIED**.

SIGNED at Houston, Texas, this **23rd** day of **August, 2013.**

Nancy F. Atlas
United States District Judge